UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JOSEPH KERMIT GUIDRY, JR.   CIVIL ACTION NO. 3:17-cv-00461
AND MARGARET GUIDRY

            JUDGE MICHAEL JUNEAU
VERSUS

            MAG. CAROL B. WHITEHURST
WOOD GROUP PSN, INC.
AND ECOSERV, LLC      JURY TRIAL REQUESTED
************************************************************************

**MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT OF ECOSERV, LLC**

MAY IT PLEASE THE COURT:

  Defendant, ECOSERV, LLC ("Ecoserv"), respectfully submits this Memorandum in

Support of its Motion for Summary Judgment seeking a dismissal of the Complaint of Intervention

[Rec. Doc. 13] of Louisiana Workers' Compensation Corporation ("LWCC").

**I.  INTRODUCTION**

  The uncontested facts demonstrate that: (1) Island Operating Company, Inc. ("IOC")

contracted with Arena Offshore, LP ("Arena") to provide production operators aboard Arena's

Eugene Island 338K Riker ("EI 338K") platform; (2) Plaintiff, Joseph Guidry ("Guidry"), was

employed as a production operator by IOC at the time of the May 31, 2017 incident aboard EI

338K giving rise to this action; (3); IOC contracted with Louisiana Workers' Compensation

Corporation ("LWCC") to provide workers' compensation insurance coverage for IOC employees;

(4) The September 1, 2014 Master Service Contract between Arena and IOC contains a waiver of

subrogation in favor of the Arena "Company Group," which is defined to include Arena's other

contractors and subcontractors; (5) Ecoserv was working for Arena aboard the EI 338K platform

on May 31, 2017 pursuant to a May 1, 2014 Master Service Contract between Arena and Ecoserv;

(6) Wood Group PSN, Inc. ("Wood Group") was working for Arena aboard the EI 338K platform

on May 31, 2017 pursuant to a March 8, 2013 Master Service Contract between Arena and Wood Group; (7) As contractors of Arena, Ecoserv and Wood Group are members of the Arena "Company Group"; (8) the LWCC Workers Compensation and Employers Liability Insurance Policy ("LWCC Policy") issued to IOC and in effect on May 31, 2017 contains a blanket waiver of subrogation endorsement to the extent that IOC is performing work under a written contract that requires a waiver of subrogation, such as the Arena/IOC Master Service Contract; (9) LWCC has contractually waived its rights of subrogation against Ecoserv and Wood Group, the very rights that it purports to assert through its Intervention.

## I.    FACTUAL BACKGROUND

Guidry was injured aboard EI 338K on May 31, 2017, when he was pinned between a tool house and a handrail during platform crane operations. [Rec. Doc. 1]  Guidry was acting within the course and scope of his employment with IOC at the time of the accident. *Id*.  The designated platform crane operator was employed by Wood Group, and it is alleged that an employee of Ecoserv, which was called out to the platform by Arena to perform cleaning, was a member of the crane lift team. *Id.*

The LWCC Policy insures IOC against liability under the Longshore and Harbor Workers' Compensation Act ("LHWCA") for any losses or damages arising out of or injury to IOC employees while in the course and scope of their employment, subject to the Policy's terms and conditions.  LWCC asserts that it has paid, and continues to pay medical and indemnity benefits to or on behalf of Guidry as a result of his injuries sustained on May 31, 2017. [Rec. Doc. 13]

On September 18, 2017, LWCC filed its Intervention Complaint for Indemnification ("Intervention"). [Rec. Doc. 13] LWCC asserts that it is subrogated to the rights of Guidry against Ecoserv and Wood Group and entitled to recover from any amount which Guidry receives in this

litigation, by preference and priority, to the full extent of payments made to or on behalf of Guidry under the Policy. *Id.* Ecoserv answered the Intervention and asserted waiver of subrogation as an affirmative defense. [Rec. Doc. 16]

At the time of the May 31, 2017 accident, IOC was working for Arena pursuant to the terms of a September 1, 2014 Master Service Contract.[1] The insurance provisions of that agreement are contained in Section 3, beginning on p. 2, and state, in pertinent part, that "Contractor [IOC] and Company [Arena] each agree to procure and maintain . . . policies of insurance in the amounts outlined in Exhibit A."

Exhibit A, beginning on p. 11, requires IOC to procure and maintain workers' compensation insurance in accordance with the laws of location where the work is being performed. LWCC acknowledges in its Intervention that IOC satisfied that obligation by purchasing insurance from LWCC. [Rec. Doc. 13]

There is also a waiver of subrogation requirement in the Arena/IOC Master Service Contract, as follows:

> Contractor and Company shall each insure that the policies they procure shall . . . waive subrogation against Company Group and its insurers or Contractor Group and its insurers, whichever is appropriate.[2]

Company Group is defined in the Arena/IOC Master Service Contract to include:

> Company, its subsidiaries, affiliated and related companies, and its and their working interest owners, co-lessees, contractors and subcontractors (except for Contractor [IOC] defined herein), and the agents, directors, officers, and employees of any one or more of the foregoing named or described parties (hereinafter all individually and collectively referred to as 'Company Group'. . . .[3]

---

[1] A copy of the September 1, 2014 Master Service Contract is attached hereto as "Exhibit A."
[2] Exhibit A, Section 3.1.
[3] *Id.*

IOC complied with the requirements of the Arena/IOC Master Service Contract and caused

its workers' compensation insurer, LWCC, to include a waiver of subrogation endorsement in the

Policy:

> **WAIVER   OF   OUR   RIGHT   TO   RECOVER   FROM   OTHERS
> ENDORSEMENT**
>
> *   *   *
>
> We have the right to recover our payments from anyone liable for an injury covered
> by this policy.   We will not enforce our right against the person or organization
> named in the Schedule. (This agreement applies only to the extent that you perform
> work under a written contract that requires you to obtain this agreement from us.)
>
> This agreement shall not operate directly or indirectly to benefit anyone not named
> in the Schedule.
>
> Schedule
>
> Blanket Waiver[4]
>
> *   *   *

Finally, it is undisputed that Ecoserv was working for Arena aboard the EI 338K platform

on May 31, 2017 pursuant to a May 1, 2014 Master Service Contract between Arena and Ecoserv,[5]

and that Wood Group was working for Arena aboard the EI 338K platform on the date of the

accident pursuant to a March 8, 2013 Master Service Contract between Arena and Wood Group.[6]

Consequently, as contractors of Arena, Ecoserv and Wood Group are members of the Arena

"Company Group" in whose favor IOC was required cause its insurers, including LWCC, to waive

subrogation.

---

[4] A copy of the LWCC Policy is attached hereto as "Exhibit B."
[5] A copy of the May 1, 2014 Master Service Contract is attached hereto as "Exhibit C."
[6] A copy of the March 8, 2013 Master Service Contract is attached hereto as "Exhibit D."

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7]  When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[8]  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[9] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[10]

The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.[11]  The moving party need not produce evidence negating the existence of a material fact, but the need only point out the absence of evidence supporting the nonmoving party's case.[12]

The nonmoving party can defeat the motion for summary judgment by either countering with sufficient evidence of its own or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving

---

[7] Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).
[8] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398–99 (5th Cir. 2008).
[9] *Galindo v. Precision Am. Corp.,* 754 F.2d 1212, 1216 (5th Cir. 1985); *Little,* 37 F.3d at 1075.
[10] *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
[11] *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.
[12] *Latimer v. Smith Kline & French Laboratories*, 919 F.2d 301, 303 (5th Cir. 1990).

party."[13]  The nonmoving party may not rest upon the pleadings, but must identify specific facts

in the record and articulate the precise manner in which that evidence establishes a genuine issue

for trial.[14]  Conclusional allegations and denials, speculation, improbable inferences,

unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific

facts showing a genuine issue for trial.[15]

Finally, it is settled that substantive law determines materiality of facts and only "facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment."[16]  When the underlying facts are established, and the rule of law is

undisputed, the issue is whether the facts meet the statutory standard.[17]

## III.   LEGAL ANALYSIS AND ARGUMENT

The undisputed facts demonstrate that LWCC provided Guidry, by and through his

employment with IOC, workers' compensation insurance.  By endorsement to its policy, LWCC

waived any right of subrogation with respect to any person or organization in whose favor IOC

was required by written contract to obtain such a waiver.

The September 1, 2014 Master Service Contract between Arena and IOC contains a waiver

of subrogation requirement in favor of the Arena "Company Group," and "Company Group" is

clearly defined to include Arena's other contractors and subcontractors.

Ecoserv was setting up to perform cleaning services for Arena aboard the EI 338K platform

on May 31, 2017, pursuant to a May 1, 2014 Master Service Contract between Arena and Ecoserv.

Wood Group, which employed the platform crane operator, was working for Arena aboard EI

---

[13] *Id.* at 1265.

[14] *See, e.g., Celotex,* 477 U.S. at 325, 106 S.Ct. 2548; *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998).

[15] *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

[16] *Anderson,* 477 U.S. at 248.

[17] *McDermott Int'l. v. Wilander*, 498 U.S. 337, 356, 111 S.Ct. 807, 817, 112 L.Ed.2d 866 (1991).

338K on May 31, 2017 pursuant to a March 8, 2013 Master Service Contract between Arena and Wood Group.  Consequently, Ecoserv and Wood Group are, by definition, members of the Arena "Company Group" entitled to the benefit of the waiver of subrogation requirement in the Arena/IOC Master Service Contract.

Lastly, it is undisputed that the LWCC Policy issued to IOC and in effect on May 31, 2017 contains a blanket waiver of subrogation endorsement to the extent that IOC is performing work under a written contract that requires a waiver of subrogation.  As demonstrated herein, the Arena/IOC Master Service Contract in fact imposes an obligation on the part of IOC to cause the policies issued by its insurers, including LWCC, to waive subrogation.

In *Allen v. Texaco*, the Fifth Circuit held that a waiver of subrogation rights by a compensation carrier barred a lien against and participation in the proceeds of a settlement between the injured employee and the third party tortfeasor.[18] "It is fundamental", the Court noted, "that a lien does not exist without a right or obligation to support it."[19]

LWCC validly waived any rights of subrogation against the Arena "Company Group," and, by way of its Intervention, is seeking to assert rights which it no longer has.  Under the facts of this case and settled Fifth Circuit law, Ecoserv submits that the waiver of subrogation in the Policy precludes LWCC from a judgment of reimbursement against the defendants in this action.

## IV.   CONCLUSION

For the reasons discussed more fully above, Ecoserv prays for summary judgment dismissing the LWCC Intervention, with prejudice.

---

[18] *Allen v. Texaco, Inc.*, 510 F.2d 977 (5th Cir. 1975).
[19] *Id.* at 981. *See also, Capps v. Humble Oil & Refining Co.*, 536 F.2d 80 (5th Cir. 1976).

Respectfully submitted:

ALLEN & GOOCH,
A Law Corporation

*/s/ S. Brian Perry*
S. BRIAN PERRY (#25209)
2000 Kaliste Saloom Road, Suite 400
P.O. Box 81129
Lafayette, LA  70598-1129
Tel:  (337) 291-1410
Fax:  (337 291-1415
BrianPerry@AllenGooch.com
Attorney for Ecoserv, LLC